UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause 4:18CR386 HEA (DDN) |
| ) | |
| MYRON WILSON, ) | |
| ) | |
| Defendant. ) | |

### ORDER

On May 22, 2018, this matter came before the undersigned for a hearing on the United States' motion for pretrial detention. (Doc. 4). Defendant was not present, having waived his right to appear in person and to confront any witnesses at the hearing. *See* Doc. 24. However, Defendant was represented by his retained counsel, Gregory Smith. Defendant is charged in an indictment with aggravated assault on a federal officer with a firearm (Count 1), felon in possession of a firearm (Count 2), and brandishing a firearm in furtherance of the crime of aggravated assault on a federal officer. (Count 3).

Defendant was initially charged by way of Criminal Complaint with the charges in Counts 1 and 3 of the indictment. Based on the Complaint Affidavit, the charges stem from the execution of a search warrant by members of the FBI Most Violent Offenders Unit and detectives with the St. Louis County Police Department on April 17, 2018. The Complaint Affidavit attests that, upon arrival at the target residence, investigators observed a number of individuals seated on the porch area. The Affidavit further attests that as officers approached, Wilson was observed holding a handgun; he fled toward the rear entrance of the target residence, brandished a handgun and pointed it in the direction of the officers. Wilson was shot and subsequently apprehended by police. Since April 2018, he remains hospitalized and in the custody of the United States Marshals.[1]

---

[1] Wilson was remanded to the custody of the United States Marshals following an initial appearance conducted at the hospital on April 23, 2018 and pending a detention hearing. Because of Wilson's medical condition, the hearing was continued multiple times until May 22, 2018.

The Bail Reform Act places upon the government a substantial burden of proof regarding whether a person should be detained:

> Only if the government shows by clear and convincing evidence that no release condition or set of conditions will *reasonably assure* the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) [of 18 U.S.C. § 3142] will *reasonably assure* the defendant's appearance can a defendant be detained before trial.

*United States v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003)(quoting *United States v. Orta*, 760 F.2d 887, 891 & n. 20 (8th Cir. 1985) (en banc)).

In determining whether there are conditions that will reasonably assure a defendant's appearance or the safety of the community, the Bail Reform Act requires consideration of: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including defendant's past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the danger the defendant poses to any person or the community upon his release.  18 U.S.C. § 3142(g).

As the Eighth Circuit has explained, in passing the Bail Reform Act, Congress was "demonstrating its concern about 'a small but identifiable group of particularly dangerous defendants.'" *Orta*, 760 F.2d at 890 (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 6-7). "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *Id.* at 891. As the *Orta* Court explained: "[T]he legislative history stresses that the decision to provide for pretrial detention is in no way a derogation of the importance of the defendant's interest in remaining at liberty prior to trial. ***It is anticipated that pretrial release will continue to be appropriate for the majority of Federal defendants***." *Id.* at 890 (citing S. Rep. No. 225, 98th Cong., 1st Sess. p. 12) (emphasis in original).

As the Supreme Court recognized in *United States v. Salerno*, 481 U.S. 739, 755 (1987), "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception . . . ." As such, "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir. 1985).

However, in this case, because of the nature of the charges in Counts 1 and 3 of the indictment, the government's case is aided by a rebuttable presumption that no condition or combination of conditions will reasonably assure defendant's appearance as required and the

safety of the community. *See* 18 U.S.C. §3142(e)(3). In light of this presumption, defendant has the burden to produce some evidence that there are conditions of release which will reasonably assure that he will not pose a danger to the community and will not flee. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). If the defendant produces such evidence, the statutory presumption does not disappear; rather, the court must consider the presumption along with all other evidence and determine whether the evidence as a whole supports pretrial detention. *Id.* Throughout all, the government retains the burden of proof described above, *see id.*, and the defendant retains the presumption of innocence. 18 U.S.C. § 3142(j).

      The evidence presented at the time of the detention hearing consisted of facts contained in the written Pretrial Services Report (Doc. 8), which were not disputed by the parties; evidence proffered by defense counsel; and evidence proffered by the Assistant United States Attorney. Specifically, based on evidence proffered by defense counsel, as a result of the shooting, Wilson currently has no feeling from his waist down; he cannot walk, and it is unlikely he will ever be able to walk. The proffered evidence also demonstrated that Wilson is not currently fit, even for a medical rehabilitation center. He was transferred to a rehabilitation center on or about May 15th, promptly developed an infection/fever, and was readmitted to the hospital where he has been ever since. Based on the evidence proffered at the detention hearing I find that given Wilson's current medical and physical condition, any risks that his release might otherwise have posed both to the community and the officers involved in the instant offense are greatly diminished and can be further mitigated by conditions of release set out in this order.

      Wilson is a lifelong resident of this district with strong family ties. His parents were present in court and indicated that they are willing and able to care for Wilson in their home whenever he is released from the hospital and/or rehabilitation. Based on the evidence proffered at the detention hearing I find that given Wilson's current medical condition and community ties there are conditions such as home incarceration and location monitoring that would reasonably assure Wilson's appearance at trial.

      I have considered arguments by the United States that, given Wilson's past criminal history, and the circumstances surrounding the instant offense, there are no conditions that would reasonably assure the safety of the community should Wilson's medical condition improve. While the risks articulated by the United States are concerning, they do not constitute clear and convincing evidence that, given the circumstances presented here, there are no conditions that

3

would reasonably assure the safety of the community. The United States conceded that Wilson himself is not a known gang member and was not a target of the investigation for which the search warrant was executed. Rather, Wilson just happened to be on the scene at the time law enforcement arrived to execute the warrant. Although the evidence proffered by the United States suggests that Wilson has a history of engaging in violent gun-related offenses, other than the instant offense, the gun-related offenses identified by the United States are remote in time and some are offenses for which Wilson was neither charged nor convicted.

      The undersigned has also considered arguments by the United States that detention is warranted because there are specific risks posed by releasing Wilson on bond *before* he is medically able to be discharged from the hospital. Specifically, the United States contended that Wilson's association with known gang members coupled with his presence in an uncontrolled quasi-public space such as a hospital, poses risks that cannot be mitigated by conditions of release. The United States argued that keeping Wilson in custody would allow the United States to better control who visits Wilson while he is hospitalized -- a step the United States contended was necessary given Wilson's history of associating with gang members including those indicted in connection with the search warrant. However, the United States conceded that it was unaware of any actual threats by Wilson or to Wilson in connection with the instant offense. As such, while there is certainly some risk in releasing Wilson while he is still hospitalized, the United States has failed to demonstrate by clear and convincing evidence that there are no conditions of pretrial release that would mitigate those risks.

      To address the United States concern regarding the risks of release pending discharge from the hospital, the undersigned initially considered releasing Wilson to home incarceration with location monitoring only *after* Wilson was discharged from the hospital. However, the United States Marshals provided information about both the heightened restrictions placed on Wilson as a result of his being in custody while hospitalized[2] and the extensive costs and resources associated with Wilson's continued detention at the hospital. Because the undersigned has already determined that there are pretrial release conditions that would reasonably assure the safety of the community and Wilson's appearance, the undersigned cannot justify subjecting

---

[2] For example, for the safety and security of the officers guarding Wilson Wilson's parents have been prohibited from seeing him since he was admitted to the hospital. The USMS explained the many logistical and burdensome steps they would need to take to allow a family visit while Wilson is in custody including for example relocating Wilson after every visit.

4

Wilson to greater restrictions than he would face if he were in jail and cannot justify requiring the United States Marshals and, indirectly taxpayers, to bear the significant cost of Wilson's continued detention.

To be sure, the serious nature of the charges in this case, coupled with Wilson's criminal history, which includes poor performance while under supervision and violence, including domestic assault, are concerning and suggest that his release may pose a greater risk to the community than his history might otherwise suggest. However, after carefully considering the factors for detention under the Bail Reform Act, the arguments of counsel, the presence of the rebuttable presumption, the undisputed facts set out in the Pretrial Services report, and the record as a whole, I find that the United States has failed to prove by clear and convincing evidence that there are no conditions this Court could impose to reasonably assure the safety of the community if Defendant is released. I further find that the United Sates has failed to prove by a preponderance of the evidence that there are no conditions this Court could impose to reasonably assure Defendant's appearance.

When the statutory presumption is considered together with the record as a whole, the undersigned finds and concludes that the conditions of release set forth in this order will reasonably assure the Court that Defendant will not be a danger to the community and will not flee.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of the United States that Defendant be detained (Doc. 4) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant shall be released from the custody of the United States Marshals Service on the following conditions:

1. The United States Pretrial Services Office approves Defendant's residence plan pending discharge from the hospital.
2. One or both of Defendant's parents must agree to serve as third party custodians for Defendant.
3. Defendant must:
    a. Execute a $25,000 Unsecured Appearance Bond.
    b. Report to and be supervised by the U.S. Pretrial Services Office.
    c. Agree to be released into the custody of one or both parents.

  d. Agree to a home confinement program (home incarceration) with location monitoring.

  e. Remain at the hospital where he is currently admitted until he is discharged from the hospital. Upon discharge from the hospital, Defendant must reside at the address approved by the United States Pretrial Services Office. Defendant must remain within the Eastern District of Missouri for residence and employment purposes unless written permission for travel outside the district is given by the U.S. Pretrial Services Office after consultation with the Court.

  f. Avoid contact with all witnesses and victims in this case; avoid contact with all known gang members and all other individuals specifically identified by the United States.

  g. Not possess any firearms or destructive devices.

  h. Not use or possess alcohol and other controlled substances.

  i. All other conditions imposed by the Court.

**IT IS FINALLY ORDERED** that the undersigned will schedule a bond appearance after being advised that Condition Nos. 1 and 2 have been satisfied.

                */s/ Shirley Padmore Mensah*
                SHIRLEY PADMORE MENSAH
                UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of May, 2018.