# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:18CR386 HEA |
| MYRON WILSON, JR., | ) ) ) | |
| Defendant. | ) ) | |

## **OPINION, MEMORANDUM AND ORDER**

This case is before the Court on Defendant's *pro se* Motion for Compassionate Release, [Doc. No. 85]. Counsel entered her appearance on behalf of Defendant and filed a Notification of No Further Filings and, with the Court's leave, withdrew as counsel. For the reasons set forth below, the Motion is denied.

## Background

The Grand Jury returned a three-count indictment charging Defendant with Aggravated Assault on a Federal Officer with a Firearm, in violation of Title 18, United States Code, § 111(b); Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2); and, Brandishing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(a). On March 6, 2019, Defendant pleaded guilty to Aggravated Assault on a Federal Officer with a Firearm and Brandishing a Firearm in Furtherance of a Crime of Violence. The

count for Felon in Possession of a Firearm against Defendant was dismissed. Defendant's convictions were based on the following facts:

> On or about April 17, 2018, members of the Federal Bureau of Investigations Most Violent Offenders Unit (along with detectives with the St. Louis County Police Department, some of who are federally deputized) executed a search warrant in the 4100 block of Camellia in the City of St. Louis, within the Eastern District of Missouri. Upon arrival at the residence, investigators observed a number of individuals seated in or near the porch area. As investigators arrived, the assembled individuals scattered, with a number of them retreating into the residence. Two individuals remained outside, unable to get back inside. One individual, later identified as defendant MYRON WILSON JR, was observed holding a handgun. When FBI Task Force Officers and Special Agents approached wearing tactical vests clearly identifying them as "POLICE," WILSON JR fled towards the rear entrance of the residence at which the search warrant was to be executed. WILSON JR then brandished the handgun, pointing it at FBI personnel. In response, multiple FBI agents and/or task force officers defended themselves and others by discharging their weapons, striking WILSON JR and effectively ending the threat he posed to them. In brandishing a firearm at them, WILSON JR impeded and interfered with FBI personnel's execution of the search warrant in the performance of their official duties.

On July 18, 2019, this Court sentenced Defendant to 120 months imprisonment followed by a 2-year term of supervised release. Defendant is presently serving his sentence at Greenville Federal Correctional Institution in Illinois, with a projected release date of December 17, 2026. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (perform search by BOP Register Number "47730-044") (last visited February 5, 2021).

2

**Defendant's Motion**

On September 8, 2020, Defendant filed his motion for compassionate release due to his health problems and claimed inability to obtain help and treatment for those problems from the staff at Greenville FCI. Defendant reported that he is in a wheelchair and has very bad pain and spasms in his left leg. Defendant also states that he is not able to use a handicap shower but must use a normal shower with a chair in it. Defendant states he has fallen twice trying to get in and out of the shower, and that no one did anything about it. Defendant reports that he has told medical staff and sent cop-outs to the warden about his problems, to no avail. Defendant also claims that he told his PA he needed therapy to learn how to walk again, but that the BOP will not give him therapy.

Defendant also states that he has been having bad depression resulting from not speaking to his children for months. Defendant states that he is taking Venlafaxine for depression but still has bad depression. As alternatives to compassionate release, Defendant requests house arrest or transfer to a medical institution. Defendant notes that, at the time of his filing, he had served almost three years of his sentence.

Although Defendant did not attach any evidentiary exhibits in support of his motion, some health information was included in his PSR:

3

[O]n April 17, 2018, the defendant was admitted [to the hospital] after sustaining a gunshot wound to his left flank which injured his liver, spleen, kidneys, diaphragm, ribs and spinal cord (verified). Wilson underwent multiple surgeries to repair the injuries; however, multiple complications arose following the surgeries which included, but were not limited to, a pulmonary embolism, pelvic and liver fluid collection, muscle spasms, vitamin D deficiency, neuropathic pain and insomnia. Ultimately, Wilson was diagnosed with a T12 spinal cord injury with paraplegia. On May 15, 2018, the defendant was discharged from Barnes Jewish Hospital to The Rehabilitation Center of St. Louis, Missouri. Wilson was admitted to the acute rehabilitation program in order to work on mobility and self-care skills. On May 16, 2018, Wilson was readmitted to Barnes Jewish Hospital with symptoms of sepsis and remained hospitalized until May 21, 2018. At that time, Wilson was again transferred to The Rehabilitation Center of St. Louis, where he remained until discharge on July 27, 2018 (verified). According to the defendant, following his discharge from The Rehabilitation Center, he was transferred to Columbia Regional Care Center in Columbia, South Carolina, for additional rehabilitation (unverified – no response received). Wilson reported he continues to experience difficulty sleeping, chronic pain and muscle spasms in his legs.

## Discussion

Under Section 603(b) of the First Step Act, effective December 21, 2019, an inmate may now himself (or through his advocate) file a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Previously, a court could only act to reduce a defendant's sentence for "extraordinary and compelling reasons" if the Director of BOP filed such a motion. As the proponent of the motion, Defendant bears the burden of proving both that he has satisfied the procedural prerequisites for judicial review and "extraordinary and compelling reasons" exist to support the

4

motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

Defendant offers no evidence that he has exhausted his administrative remedies with the Bureau of Prisons as required under the First Step Act, which requires him to petition the Bureau of Prisons for release before he can petition the court directly. 18 U.S.C. § 3582(c)(1)(A)(i). Defendant bears the burden of showing that he exhausted his administrative remedies with the Bureau of Prisons before filing a compassionate-release motion. *United States v. Kinley*, No. 1:16-CR-10018-003, 2020 WL 2744115, at *2 (W.D. Ark. Apr. 17, 2020). Here, defendant makes no such showing.

In evaluating a defendant's request for reduction in sentence on its merits, 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to find that "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction." Any reduction must be consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). United States Sentencing Guideline § 1B1.13, which governs compassionate-release reductions, provides some specific examples, including:

5

(A) Medical Condition of the Defendant.—

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In support of his request, Defendant cites his health problems, including his inability to walk, and his inability to get help and treatment at Greenville FCI.

The Court does not find that Defendant has met his burden of proving that extraordinary and compelling circumstances exist warranting a reduced sentence. Although the PSR shows that Defendant suffers from paraplegia, there is nothing in the record to demonstrate that Greenville FCI cannot adequately treat Defendant nor that his health is in dire condition.

For the foregoing reasons, this Court finds that Defendant did not exhaust his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A)(i). Moreover, even if the Court could excuse Defendant's failure to exhaust his procedural remedies, Defendant has not met his burden of proving that "extraordinary and compelling reasons" exist to support the requested relief.

Accordingly, the motion for compassionate release [Doc. No. 85] is **denied**.

Dated this 9th day of February, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE